# STATEMENT OF DETECTIVE BRITTANY GUNN

## INCIDENT #2017-125546

WHITENER: Alright this is Sergeant Whitener with Little Rock Police Department. Today's date is October the 10th, 2017 the time is currently 1141 hours. Here at 3917 West 12th in reference to Incident Number 2017-125546. It is a homicide/use of force that occurred at 1501 North University. Uh here with me today is Detective Chuck Ray and Captain King. Uh as well as Detective Brittany Gunn and her attorney Degen Clow. Uh start Detective Gunn with the, this Miranda Rights form. What I've got here it's got your information at the top and your date of birth. Uh that you're a suspect and before asking you any questions I want to advise you of your rights. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning at no cost to you if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. What is your current level of education?

GUNN: A Bachelor's Degree.

WHITENER: And can you read and write?



DEFENDANT'S
EXHIBIT

**3**

1

44-1

Investigation  114415

GUNN:             Yes.

WHITENER:         Alright if I can get you to initial that you can read
                  and write. Sign if you understand what those rights
                  are.

GUNN:             Employee number?

RAY:              No.

WHITENER:         Uh next is your Waiver of Rights. It states I have
                  read the above statement of my rights and I fully
                  understand each and every right. No promises or
                  threats have been made to induce me into making
                  this statement. With full knowledge of my rights I
                  hereby waive those rights and agree to answer
                  questions concerning the offense which I am
                  suspected of committing. So if you understand what
                  your rights are and what your Waiver of Rights
                  means and you do want to waive your rights and
                  give a statement I just need you to sign there please.
                  Alright Detective Gunn at uh 1501 North University
                  on October the 7th approximately 0417 hours can you
                  tell me about the incident that occurred at that
                  location at that time?

GUNN:             I was working off duty at uh Local Union bar. And I
                  was standing outside of my car talking to uh two
                  black males. And there was a white male uh who
                  was Turkish came out. He was obviously intoxicated
                  he said he was waiting on his Uber. And so uh we're
                  all kinda talking uh shooting the shit for a little bit.
                  One car pulled in and had an Uber magnet on the
                  side of it. And we asked was that his car he said no.
                  Uh so that Uber pulled off and then a dark colored

442

Investigation  114416

sedan pulled in. And uh he said that's my Uber right there. So he walked to that car and as he's walking to it I noticed the driver was drinking a beer. Uh so I walked towards the car uh and at some point the uh the Turkish guy he got back out. And uh I got the beer and set it on top of the car. The Turkish guy grabbed the beer and poured it out and threw the bottle somewhere. So I asked the driver for his driver's license. He said I don't have it with me. I was like well you know I got to report you to Uber, call somebody to come get your car. Uh so I don't have to take you jail or whatever. Uh so he dialed somebody on his phone and I remember seeing Unc on the screen but they didn't answer. So at this time I'm asking him for registration. Uh he opened the glove box and I saw a registration and I saw a few uh tickets. Uh moving citations. So he pulled all that out and I said there's your registration right there give it to me. Uh he's like no that's not it. Uh and so I was like yes it's right here between the papers and I grabbed it but then he snatched it from me. Uh from there uh I had had him turn the car off cause he's kinda being weird. Uh and he turned it off but I can't remember if he took the keys out or, or what. But uh he said and it's not verbatim but it was I'm about to go. And so I leaned further into the car and put my hand on his hand to keep him from starting the car back up. Uh and I grabbed my radio with my left hand I said David 900 send me some units. And so we're just kinda holding on and I saw a security guard tell the security guard hey Marcus grab his keys. But I think he was just kinda confused about what to do. And the next thing I know I saw Officer Nick Smith. And so I'm trying to push him out of the car from the passenger's side and Nick Smith is

3

44-3

Investigation  114417

trying to pull him from the driver's side. But he just had a death grip on something. And somehow that car got started back up. It got put in drive and he took off with me still in the car. And I don't know what happened to Nick. Uh the club was still going so there were cars in the parking lot. So I remember him going towards a car and I'm thinking oh shit. And I pulled my gun out and I start shooting him because he wouldn't stop. Uh and the next thing I know I saw a brick wall. And that's the last thing I remember.

WHITENER:    Okay.

GUNN:    Uh before uh when Nick got there, I forgot this part. Uh I had pulled my gun on him telling him to stop I'll fucking shoot you while he was fighting us. Uh but I put my gun back up, got my taser out and I tried to tase him uh with drive stun but it wasn't working. So I, I don't know what happened to that taser. Uh and I pulled my gun again saying stop I'll fucking shoot you. Fuck, fucking get out of the car and stop. And the car took off.

WHITENER:    Okay so when you were working off duty at this club were you already logged into the system prior to this event happening?

GUNN:    Yes sir.

WHITENER:    Okay so when they when you got on the radio and you asked for other units they already knew where you were at and –

GUNN:    Yes sir.



4

G00156

**Investigation  114418**

WHITENER:      that kind of stuff. Okay uh the, what was your
               starting time for off duty?

GUNN:          Midnight.

WHITENER:      Okay and you were supposed to go till when?

GUNN:          05.

WHITENER:      05. Okay uh what uniform were you wearing at that
               time?

GUNN:          Class B.

WHITENER:      Okay Class B uniform? So how did you get, and you
               kinda went into it a little bit but I'd like to go into a
               little bit more detail on how you got into the
               passenger –

GUNN:          Uh huh.

WHITENER:      seat of that car.

GUNN:          Okay the driver's side door was open because the uh
               the Uber passenger was in there. But he got back out.
               So that door was open. But when he said I'm about
               to go –

WHITENER:      Sorry you said the driver's side door. The Uber rider
               –

GUNN:          Uber rider –

WHITENER:      was in –

5

44-5

Investigation  114419

GUNN:               was in the passenger's seat.

WHITENER:           passenger's seat.

GUNN:               And so that door was already open –

WHITENER:           Okay.

GUNN:               when I went up to confront him about the beer. And uh the rider got out. And so when he said I'm about to go I think I leaned in –

WHITENER:           Okay.

GUNN:               uh to try to keep him from turning the key or something.

WHITENER:           Okay. Uh so at that point at, at some point did you, because you're, you're talking about trying to get him a ride or whatever. At some point was he, were you, did you advise him that he was under arrest or?

GUNN:               No I told him it's four o'clock in the morning I don't want to arrest you.

WHITENER:           Okay.

GUNN:               And so call somebody to come pick up your car.

WHITENER:           Okay.

GUNN:               Because I can't let you drive and I'm definitely not gonna let you drive this guy home.

6

44-6

Investigation  114420

WHITENER:      Okay. So one of the things when, when Officer Smith gets there he of course has his MVR and his microphone is on. Obviously when, as he's running up it's in the middle of a of a sentence that you're already speaking.

GUNN:      Uh huh.

WHITENER:      And the onl – the words that are heard are uh shoot you what part of that don't you understand.

GUNN:      Uh huh.

WHITENER:      Was there a reason for that statement –

GUNN:      Because he was actually -

WHITENER:      at that point?

GUNN:      fighting me.

WHITENER:      Okay.

GUNN:      And he was obviously intoxicated.

WHITENER:      Okay.

GUNN:      Uh just pulled up drinking a beer.

WHITENER:      Okay.

GUNN:      Uh and I knew I can't fight this guy.

WHITENER:      Right.

7

44-7

G00159

Investigation  114421

GUNN:            So that's why I was saying I'll fucking shoot you what don't you understand like stop.

WHITENER:        Okay. Uh did you see any weapons in the car?

GUNN:            No.

WHITENER:        Okay. Uh when he's so he continues to fight once Officer Smith gets there as well correct?

GUNN:            Yes.

WHITENER:        And you guys are still struggling trying to get him out of the car –

GUNN:            Yes.

WHITENER:        but he doesn't come out. Uh at the point that he –

(Dinging sound)

WHITENER:        Excuse me, sorry. At the point that the vehicle takes off are you aware at that point that Officer Smith was injured or knocked down  or anything, could you tell from your vantage point?

GUNN:            No.

WHITENER:        Okay.

GUNN:            I just knew that car was going fast towards a car.

WHITENER:        Right.

GUNN:            And I was in it and I got scared.

8

44-9

WHITENER:     Okay. Was your, did your car did the passenger's side door close -

GUNN:     I don't remember.

WHITENER:     with you in it or do you know?

GUNN:     I don't know.

WHITENER:     Okay. Alright so what then what is your reason for using deadly force at that point? Why did you shoot at that point?

GUNN:     Cause he took off at a high rate of speed. He was obviously drinking with me in the car. And I was scared for my life.

WHITENER:     Okay.

GUNN:     Cause he was going towards a car and I knew there was nothing out there but cars and people transitioning from inside the club to outside the club.

WHITENER:     Okay.

GUNN:     So I needed him to stop.

WHITENER:      So there were multiple people from inside the club that were outside at that point?

GUNN:     I don't remember.

WHITENER:      You don't?

Investigation  114423

GUNN:          But I know and I've worked that club for four years I know between four and four forty-five you got a few coming in you got a few coming out.

WHITENER:      Okay.

GUNN:          Because the club is getting ready to close.

WHITENER:      Okay.

GUNN:          And where he was driving towards that's where a lot of them park.

WHITENER:      Okay and you said you, you saw the wall at, at some point. Was that before or after you had fired shots?

GUNN:          I saw the wall after I fired shots.

WHITENER:      After, okay. And then you don't remember anything after striking the wall at that point?

GUNN:          After I saw the wall I thought to my shit oh shit I've got to get out of this car. And I think as I turned to go out the, the door that's when we hit the wall and that was it.

WHITENER:      Can you describe for me your injuries that you received from this incident at that time?

GUNN:          Uh I have a laceration on the right side of my head on my hairline that was stitched up. Uh my hand my left hand is cut up front and back. Uh the back of my right upper forearm uh has some road rash and a lot of bruising. Uh my right shin uh I can't really describe if it's a bruise or not but it's some skin

10

44-10

Investigation  114424

missing there. My left knee is swollen and it's hard to walk on it. And just some back and neck pain.

WHITENER:       Okay. How many stitches did you receive on your head do you know?

GUNN:           I think the last number I heard was six.

WHITENER:       Okay, okay. Detective Ray you want to?

RAY:            Officer Gunn you described I think one of the gentlemen that you were talking to as Turkish.

GUNN:           Yes.

RAY:            Uh can you describe him for me to make sure that we're talking about the right person?

GUNN:           It's a white male, tall maybe six feet. Uh –

RAY:            Do you know what kind of shirt he was wearing?

GUNN:           Light blue.

RAY:            Uh and he was actually the one I believe you said if I can find it in my notes here. Uh that he actually said that's my Uber?

GUNN:           Yes.

RAY:            Who did he say this to?

GUNN:           To me and the other two gentlemen I was talking to.

RAY:            Did the man in the car –

Investigation  114425

GUNN:          Uh huh.

RAY:           ever identify himself or did you hear him identify himself as an Uber driver?

GUNN:          I can't remember but I remember telling him you know I'm gonna have to report you to Uber.

RAY:           Right.

GUNN:          He, he said yeah.

RAY:           Basically the Turkish gentleman who I believe actually for the record is Irish.

GUNN:          Oh I'm sorry.

RAY:           No, no, no that's quite alright. He, I'm assuming you thought he was Turkish cause of his accent?

GUNN:          Yes.

RAY:           Yeah he was very heavy uh brogue. Uh he did call we spoke with him he did say he called for an Uber.

GUNN:          Uh huh.

RAY:           Uh I guess what I'm trying to get a point is at no point did that car have an Uber sticker on it?

GUNN:          No.

RAY:           He just basically just said oh that's my Uber guy?

000164
Investigation  114426

GUNN:           Uh huh.

RAY:            Started heading out. Alright uh -

GUNN:           But there are Uber cars that have the sticker on it and some that don't.

RAY:            And some that don't I understand. One of the other things I want to touch base on. And I know it sounds like a stupid question but you said you were wearing your Class B. For people that don't know can you describe what a Class B uniform consists of what it looks like.

GUNN:           It's a, a, the polyester shirt. Uh I think I had long sleeve on since I had a funeral that day. The badge uh duty belt. Gun uh what else?

RAY:            So it is a standard Little Rock which you see patrolmen wear around the city.

GUNN:           Yes sir.

RAY:            All the time. Okay. And on your duty belt what all, certain people carry certain things. I don't know I for one don't have pepper spray or a taser.

GUNN:           Uh huh.

RAY:            Uh can you tell me what was on your belt?

GUNN:           Two mags my firearm uh my handcuffs. A flashlight, baton uh my taser. Uh and my pepper spray.

13

44-13

Investigation  114427

RAY:        Uh the Uber driver I'm sorry Irish, Turkish – we'll get it right in a minute. The guy who was waiting on the Uber car.

GUNN:       Uh huh.

RAY:        Tell me again exactly where he sat initially in the car at.

GUNN:       In the passenger's seat.

RAY:        Front seat? He got in the front seat, passenger seat?

GUNN:       Yes front passenger's seat yes.

RAY:        And you saw the, the so called Uber driver uh hand him a bottle?

GUNN:       No he didn't hand him a bottle. He was drinking from a bottle.

RAY:        Okay the, the –

GUNN:       A beer bottle.

RAY:        the driver of the car was actually drinking from a beer bottle?

GUNN:       Yes.

RAY:        Or what you perceived as a beer bottle?

GUNN:       Yes.

RAY:        Alcohol beverage did he give that to did you say?

14
44-14

GU0166

Investigation  114428

GUNN:         No he, he handed it to me and I sat it on top of the car. Uh and it was a Corona. And the Turkish guy at this point he had gotten out of the car and he grabbed that bottle off the top of the car and poured it out.

RAY:          When he got out of the car where did he go if you recall?

GUNN:         He was behind me and I don't know where anybody else went after the fight started.

RAY:          When you were wrestling with him initially I think before Officer Smith arrived. You had already upholstered your weapon uh you had your weapon out. I have to ask why, why did you have your weapon out at that point?

GUNN:         Just because of display of force.

RAY:          Did he at any point touch the weapon?

GUNN:         No.

RAY:          You said Marcus we were talking about security Marcus who, define him a little bit more. Who is Marcus?

GUNN:         Uh he's well I don't even know if you call him security for the club. Uh but he takes the money when people go inside the club. I remember when everything started he was coming out and I kinda saw his face while I was wrestling with him. And I said Marcus take his keys. Uh because it -

RAY:            And he that would have put Marcus on the driver's side?

GUNN:           The driver's side. The driver's side of the car faces the front door of the club.

RAY:            I do want to touch base on your off duty capacity. How, how long have you worked there did you say?

GUNN:           Uh about four years. I believe it was my first off duty job when I uh got out of my probation period.

RAY:            And when you, you said that you logged in. What is for people that don't know what does what does that mean you logged in and what define what being off duty like that what does that mean?

GUNN:           I don't remember if I called Communications or I uh talked to Communications on our secondary channel to let them know I'll be working here off duty from this time to 0500. Uh 1501 North University, Local Union.

RAY:            Is that normal that you would do that in an off duty job?

GUNN:           Yes, yes.

RAY:            Uh one of the other things you touched base on was uh the guy was acting weird.

GUNN:           Uh huh.

RAY:            In fact you quoted as being weird. Uh the driver?

44-16

C00168

Investigation  114430

GUNN:              Uh huh.

RAY:               Can you go a little bit more into detail on what being
                   weird means?

GUNN:              I noticed it when he opened his glove box and I saw
                   his registration. And he told me no that's not the
                   registration. Uh and then I grabbed the paper work
                   from him and he snatched it back.

RAY:               What did you have in your hands at that point?

GUNN:              Nothing. Uh –

RAY:               A flashlight?

GUNN:              maybe a flashlight.

RAY:               Uh do you remember putting your flashlight back up
                   in your in your holster at any given time?

GUNN:              No.

RAY:               You do remember putting your gun –

GUNN:              Yes.

RAY:               Holster, re-holstered your weapon. When did you re-
                   holster your weapon again?

GUNN:              Uh in the car once Nick Smith got there. Uh –

RAY:               The arrival of backup was there then?

GUNN:              Yes.

44-17

G00169

Investigation 114431

RAY:            What's his demeanor? You've been a police officer for how long?

GUNN:           Five years.

RAY:            In the course of being a police officer for five years how long were you in patrol?

GUNN:           Four years.

RAY:            Okay so you've been a, been a detective for a little over a year. Interviewed a lot of people?

GUNN:           I've been a detective for about six months.

RAY:            So you've interviewed a lot of people?

GUNN:           Yes sir.

RAY:            Have you been around people that have been either intoxicated or on drugs or anything like that in your career?

GUNN:           Yes sir.

RAY:            Did this gentleman give any impression of being on either one of those?

GUNN:           He seemed like he might have been a little intoxicated. Uh –

RAY:            And how did you come up with that opinion?

000170

Investigation 114432

GUNN:          His eyes were bloodshot. Uh cause I remember looking directly in, in them while we were struggling.

RAY:           At any point during the conversation if you recall do you remember if he said anything when you were talking to him and what other than that's not my ID or my registration?

GUNN:          I remember him saying I don't have my ID. Uh I asked what his name was but I don't remember what he told me. And then the subsequent no that's not the registration. And I'm about to go.

RAY:           Did uh you tell him now, what did he say when you tried to get him out of the car did he ever respond to that?

GUNN:          I don't remember.

RAY:           Uh so now you're in the car for the record describe to me your position in the car.

GUNN:          Okay, I'm on the passenger's side and once the fight started it's like I had leaned in to get to him. Uh I think my feet were still planted but I was just leaned in trying to hold his hand to stop him from driving off.

RAY:           Okay and then once he drives off were you were you, I guess what I'm getting at obviously you weren't seated in the vehicle like you were going for a Sunday drive?

GUNN:          No sir.



19

000171

Investigation  114433

RAY:              So you were how were you turned towards him?

GUNN:             Yes.

RAY:              Do you remember where your legs were at once he took off?

GUNN:             No sir I don't remember.

RAY:              Okay. And you don't I think you told Sergeant you didn't remember the door shutting.

GUNN:             Correct.

RAY:              But okay so now he is in gear and he is driving off.

GUNN:             Uh huh.

RAY:              For the record how was he driving off.? Was he going for a leisurely spin was he accelerating was he going down?

GUNN:             He, he was accelerating and going at a high rate of speed.

RAY:              I see, um, Captain?

KING:             You talked earlier about sort of an escalation of force cause you had your taser out. Can you walk us through walk us through that.

GUNN:             I, I had my gun out at first saying I'm fucking shoot you stop you know. Uh but uh Nick got there so I pulled my taser out. And I tried to drive stun him.

44-20

000172
Investigation  114434

|       |       |
|-------|-------|
|       | But that wasn't working so I the taser went somewhere. Uh and then we took off. And – |
| KING: | And so – |
| GUNN: | at some point I pulled my gun out again and shot him. |
| KING: | Gotcha. When you say the taser didn't work you mean it's not clicking it's not firing? It's not – |
| GUNN: | I remember seeing a spark from it but for some reason it didn't deliver the results that I know it can deliver. |
| KING: | Did he respond like, you touch him with it? |
| GUNN: | I don't believe he responded to that. |
| KING: | Okay. And do you know where do you know where you touched him? A leg and arm? |
| GUNN: | No sir. |
| KING: | You just tried it and nothing happened? |
| GUNN: | Yes sir. |
| KING: | You got a question? |
| RAY:  | Uh yeah I didn't mean to interrupt Captain but you're again for the record for people that don't know what does it mean when you drive stun someone? |

21

44-21

Investigation 114435

GUNN:           It's kinda hard to explain. Uh basically I put the taser to him and I arched it to give him –

RAY:            Because it can either be used as a stun gun or a taser that fires uh –

GUNN:           Correct. Probes.

RAY:            probes.

GUNN:           Yes uh –

RAY:            Did you fire probes?

GUNN:           I did not fire probes.

RAY:            You were using it more like a stun gun.

GUNN:           I, a stun gun yes sir.

RAY:            Oh okay thank you.

KING:           Uh Detective Ray hit on accelerated at a high rate of speed. Can you can you estimate how fast you think y'all were going?

GUNN:           I, I can't. It happened so quick I don't know how fast we were going. I just know we were going fast. And he had no intention of stopping or slowing down.

KING:           Was there, was he continuing to talk to him as it was going?

GUNN:            I think once the car took off I didn't say anything else. But I don't remember.

22

44-22

Investigation 114436

KING:      Okay. Uh and you say your ultimate decision, tell me what your ultimate decision to shoot was based on.

GUNN:      The fact that he took off at a high rate of speed with me in the car. And that there are cars out there and also patrons going inside and outside the club. And I was genuinely scared for my life and somebody else's that might have been out there walking.

KING:      And when you when you fired do you remember where you aimed where, how, how you shot?

GUNN:      No sir. I don't remember.

RAY:       I do have to ask you said you fired what did you fire your duty weapon?

GUNN:      Yes uh –

RAY:       Do you know what duty, what it is can you describe that cause we don't know.

GUNN:      Glock 22 .40cal.

RAY:       Do you keep your weapon uh magazine full?

GUNN:      Yes sir.

RAY:       So you would have had fifteen in the magazine and one in the chamber?

GUNN:      Yes sir.

000175

Investigation  114437

KING:          You say uh you, you were in fear for your life you
               fired. Uh the next thing you remember is seeing the
               wall and then that's it?

GUNN:          Yes sir.

KING:          And what do re – what is the next thing that you
               remember after that?

GUNN:          I opened my eyes and I saw pavement and bricks
               everywhere. And then I was back out. And then I
               opened my eyes again and I saw Sergeant Atkinson
               and me being put in the back of the ambulance.

RAY:           What did you think would happen when you fired
               your weapon? What would what would the reasoning
               behind firing your weapon. I understand you're you
               stated that you were in fear for your life. So what
               was your ultimate goal once you fired that weapon
               what did you want to see?

GUNN:          That he would take his foot off the gas.

RAY:           And be able to stop?

GUNN:          Yes.

KING:          I'm good.

RAY:           Sergeant?

WHITENER:      I don't have any further questions. Do you have
               anything else you'd like to say at this point?

GUNN:          No sir.

24

44-24

000176

Investigation  114438

WHITENER:        Okay sorry uh Degen do you have anything that, any
                 questions?

CLOW:            I don't have questions I think we've covered
                 everything we wanted to be covered here.

WHITENER:        Okay alright this will conclude the interview. The
                 time is now 12:04.

This transcript has been reviewed with the audio recording submitted and it is an accurate

Signed _____ ce

000177

Investigation  114439